# In the United States Court of Federal Claims

|  |  |
|---|---|
| JESSE RICHARDSON, | |
| *Plaintiff,* | |
| v. | No. 20-86C |
| | (Filed: May 31, 2022) |
| THE UNITED STATES OF AMERICA, | |
| *Defendant.* | |

*Jonathan Crisp*, Harrisburg, PA, for Plaintiff.

*Richard Schroeder*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge*.

Jesse Richardson ("Mr. Richardson" or "Plaintiff") brings the present Complaint under the Military Pay Act, 37 U.S.C. § 204, seeking reinstatement to active duty and a promotion with back pay and benefits, as well as the correction or modification of records in his military personnel file. After the United States of America ("Government" or "Defendant") filed the Administrative Record, Plaintiff filed a Motion for Judgment on the Administrative Record, pursuant to Rule 52.1 of the Rules of the U.S. Court of Federal Claims ("RCFC"). Defendant filed a Cross-Motion to Dismiss or, in the alternative, for Judgment on the Administrative Record. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**, the parties' Cross-Motions for Judgment on the Administrative Record are **DENIED** as moot, and the Complaint must be **DISMISSED**.

## I.    Background

### A.    Factual Background

The following facts are based on the allegations in Plaintiff's Complaint, which the Court accepts as true solely for the purpose of ruling on the Government's pending Motion to Dismiss. Where documents are contained both in Plaintiff's exhibits and the Administrative Record, the Court cites to the latter for uniformity and ease of use.

### 1.    Investigation, Titling, and Adverse Entries into Personnel File

Mr. Richardson began his active service in the U.S. Army ("Army") on September 16, 1999.  Admin. R. ("AR") 1050–60, ECF No. 18-3.  He rose to the rank of sergeant first class ("SFC") before being appointed to the rank of warrant officer ("WO") on December 4, 2014.  AR 1180–84, ECF No. 18-4.  In January 2015, the U.S. Army Criminal Investigation Division ("CID") opened an investigation into an allegation that Mr. Richardson sexually assaulted a civilian Army employee in January 2014.  Compl. ¶ 2, ECF No. 1; AR 96–100, ECF No. 18-1.  During the investigation, CID discovered evidence of a second alleged incident of sexual misconduct from August 2014.  Compl. ¶ 37; AR 91–95.  Either during the investigation or at its conclusion in May 2015, Mr. Richardson's name was entered into the title block of an investigation report and subsequently into the Defense Criminal Investigation Index ("DCII"), an action called "titling."  Compl. ¶¶ 2, 41.

On July 30, 2015, based on the CID investigation, the U.S. Army Intelligence and Security Command ("INSCOM") commander issued a general officer memorandum of reprimand ("GOMOR"), an administrative measure that admonished Mr. Richardson for the alleged January 2014 offense.  Compl. ¶ 43; AR 73.  Mr. Richardson submitted a rebuttal, Compl. ¶ 44; AR 336–48, and the commander entered the GOMOR into Mr. Richardson's personnel file, Compl. ¶ 45; AR 74.  Subsequently, on May 5, 2016, Mr. Richardson received a negative officer evaluation report ("OER") for the time period that included the alleged offenses. Compl.  ¶ 50; AR 350–54.  The OER was also put into his personnel file.  Compl. ¶ 52.

### 2.    Delayed Promotion and Separation Proceedings

In 2016, Mr. Richardson was selected for promotion from the rank of WO to chief warrant officer two ("CWO2").  Compl. ¶¶ 7, 58; AR 121.  However, on May 16, 2016, the INSCOM commander notified Mr. Richardson that, due to the alleged misconduct uncovered during the CID investigation, he was recommending that Mr. Richardson be separated with an other than honorable characterization of service.  Compl. ¶ 53.  Mr. Richardson was instructed that he could either resign in lieu of separation or show cause for retention in the Army at a board of inquiry ("BOI").  *Id.*

Mr. Richardson chose to proceed with a BOI.  *Id.*  A BOI is an adversarial administrative separation board for a military officer, which considers whether an officer should be separated for cause and, if so, the appropriate characterization of the officer's service.  *See* Army Reg. 600-8-24 ¶¶ 4-6–4-7, 4-15(b)(2); Compl. ¶ 54.  The BOI's recommendation is partially binding: the Army may reach a disposition more favorable to the officer than a BOI recommended, but it may not reach a less favorable outcome.  Army Reg. 600-8-24 ¶ 4-17(d); Compl. ¶ 55.  If a BOI determines that the evidence of misconduct or substandard performance of duty does not support the officer's separation, then the Army may not administratively separate the officer on the basis of that conduct.  Army Reg. 600-8-24 ¶ 4-6(a), Table 4-1; Compl. ¶ 55.

On October 5, 2016, the BOI found no basis for separation and recommended Mr. Richardson's retention in the Army.  Compl. ¶ 56; AR 379.  It did, however, comment that he showed a lack of judgment by not immediately leaving a men's bathroom when a woman, whose allegation triggered the investigation, entered.  AR 379.  On December 13, 2016, the INSCOM commander approved the BOI's findings.  Compl. ¶ 57; AR 358–59.

However, while the BOI was pending, a separate administrative process caused Mr. Richardson's promotion to be delayed and referred to a promotion review board ("PRB"). Compl. ¶ 59; AR 656, ECF No. 18-2.  A PRB is convened when a routine screening of promotion selectees uncovers derogatory material, such as a GOMOR or adverse OER, or upon referral by an appropriate officer.  Army Reg. 600-8-29 ¶ 8-2(b).  The PRB's recommendation of whether the officer should be removed from the promotion list is reviewed by the Secretary of the Army ("SA") for an ultimate determination.  Id. ¶ 8-8(c).  On September 6, 2016, Mr. Richardson submitted a rebuttal to his potential removal from the promotion list for the PRB's review and requested that the PRB be delayed so that the PRB could consider the BOI's findings. Compl. ¶ 62; see AR 80, 82.

On November 29, 2016, Army Human Resources Command ("HRC") informed Mr. Richardson that the PRB's recommendation was forwarded to the Acting SA.  Compl. ¶ 63; AR 382–83.  Mr. Richardson responded to the HRC representative that he had "hoped the PRB wouldn't actually convene for another couple of months."  AR 383.  In fact, the PRB had convened on November 4, 2016, and submitted a recommendation on November 7, 2016, that Mr. Richardson be removed from the promotion list.  AR 80–81, 126–27.  On December 22, 2016, Mr. Richardson provided HRC a copy of the BOI report and a transcript of the proceedings so that the SA could review them along with the PRB's findings before deciding whether to remove him from the promotion list.  Compl. ¶ 63; AR 381.

### 3.    Removal from Promotion List and Mandatory Separation

On February 28, 2017, the Acting SA removed Mr. Richardson from the promotion list to CWO2.  Compl. ¶ 64; AR 1201.  Per Army regulations, a WO who is not selected for promotion to CWO2 must be separated from the Army unless they are within two years of retirement (traditional retirement eligibility begins at 20 years of service).  Army Reg. 600-8-24 ¶ 5-11(a). Per the Acting SA's March 20, 2017 notice of separation, Mr. Richardson was required to separate no later than September 5, 2017.  AR 891.  Were this separation date 11 days later, Mr. Richardson would have been within two years of retirement, and thus immune from this mandatory separation.  Compl. ¶¶ 8, 65; AR 141.  The acknowledgement form included with the notification presented Mr. Richardson with four options: He could (1) request appointment in the Army Reserve following involuntary separation; (2) end his affiliation with the Army entirely after involuntary separation; (3) resign and request enlistment in the active-duty Army; or (4) request early retirement.  AR 893.

On April 4, 2017, Mr. Richardson acknowledged receipt of the separation notice and chose to request early retirement.  Id.  He initialed the paragraph that stated: "I [] desire early retirement under the Temporary Early Retirement Authority (TERA) program . . . I understand that TERA is not an entitlement and if I am flagged for adverse action, or undergoing an elimination proceeding, TERA will not be approved until the conclusion of that action."  Id. Next to his signature, he included a hand-written request that a special review board ("SRB") be convened to address the difference between his favorable BOI results and the SA's determination to deny him promotion, but stated that if this request was denied, he would apply for early retirement.  Id.  Alternatively, if the early retirement request was denied, he would apply for a Reserve appointment.  Id.

The next day—apparently without waiting for a response to his request for an SRB—Mr. Richardson applied for early retirement. AR 887–90.[1] On his application form, he "request[ed] that [he] be released from active duty and assignment on 31 August 2017 and placed on the retirement list on 1 September 2017 or as soon thereafter as practicable." AR 888. He also stated that he "underst[oo]d that if the Secretary of the Army accepts this application, it may not be withdrawn except for extreme compassionate reasons or for the definitely established convenience of the Government." AR 889. He further acknowledged that, if his request were approved, an Army grade determination review board would decide the last grade in which he had served satisfactorily and he would be retired in that grade. *Id.* Mr. Richardson's request for early retirement was granted, and on September 19, 2017, the ASA for Review Boards determined that Mr. Richardson should be retired in the grade of SFC. AR 69. Mr. Richardson was placed on the retired list at the rank of SFC effective November 30, 2017. Compl. ¶ 9; AR 1040.

### 4. Army Board for the Correction of Military Records ("ABCMR") Recommendation and Assistant SA for Manpower and Reserve Affairs ("ASA (M&RA)") Decision

On May 22, 2017, roughly seven weeks after submitting his retirement request, Mr. Richardson appeared to change his mind about retiring and petitioned the ABCMR for an expedited review of his pending separation. Compl. ¶¶ 10, 68; AR 133. He requested that the GOMOR and OER be removed from his personnel file, his name be removed from the DCII, and that he be reinstated in the Army, promoted to CWO2, and awarded all back pay and allowances. Compl. ¶¶ 10, 68; AR 135–43. On November 16, 2017, the ABCMR unanimously recommended partial relief. Compl. ¶ 69; AR 8–10. It recommended his reinstatement and promotion with back pay and allowances, and the GOMOR and OER's removal from his personnel file. Compl. ¶¶ 69–70; AR 8–10. The ABCMR did not recommend reversing his titling but suggested that the Army consider amending the investigative record to reflect that the allegations against Mr. Richardson were "unfounded." Compl. ¶¶ 11, 69–70; AR 9–10. However, the Acting ASA (M&RA) disagreed with the ABCMR's recommendations and denied any relief. Compl. ¶ 71; AR 7.

---

[1] In addition to Plaintiff's pleadings, the Court takes judicial notice of Mr. Richardson's acknowledgement of receipt of his separation notice and his retirement request form, which he does not include in his Complaint or its appendices. AR 887–93. The Court and the parties discussed these documents throughout the litigation. *E.g.*, Def.'s Mot. to Dismiss and Mot. for J. on the Admin. R. ("Def.'s Mots."), 8, 19–20, ECF No. 31; Pl.'s Resp. and Reply in Supp. of Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Resp."), 7–8, ECF No. 34; Def.'s Reply in Supp. of Def.'s Mots. ("Def.'s Reply"), 7, 14, ECF No. 37. *See also* Tr. of Oral Arg. (Apr. 13, 2022) ("Hr'g Tr."), 7:24–8:16; 10:6–11:19; 16:13–17:2; 18:21–19:9; 24:15 – 26:16; 27:12–28:25, ECF No. 46. Their validity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Thus, although this document entered the record after Plaintiff filed the Complaint, the Court may consider it for the purpose of evaluating Defendant's 12(b)(6) motion.

### B.        Procedural History

On January 27, 2020, Plaintiff filed his Complaint in this Court.  *See* Compl.  Following Defendant's Uncontested Motion for Voluntary Remand and Stay of Court Proceedings, ECF No. 5, this Court remanded the case to the ASA (M&RA) with an order to issue a new decision. Order (Mar. 31, 2020), ECF No. 6.  However, the result on remand remained the same: the ASA (M&RA) again denied Mr. Richardson any relief.  *See* Dec. on Remand (Aug. 20, 2020), ECF No. 11.  On November 20, 2020, the case returned to this Court and the Government filed the Administrative Record.  *See* AR, ECF Nos. 18, 18-1–4.

On February 10, 2021, Plaintiff filed a Motion for Judgment on the Administrative Record.  Pl.'s Mot. for J. on the Admin. R., ECF No. 26.  On April 15, 2021, Defendant filed a Response and Cross-Motion to Dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) or, in the alternative, for Judgment on the Administrative Record.  *See* Def.'s Mots.  Over the next several months, the parties filed responsive pleadings.  *See* Pl.'s Resp.; Def.'s Reply.  Pursuant to an order from this Court, Order (Mar. 14, 2022), ECF No. 40, the parties filed supplementary briefs on March 25, 2022.  *See* Def.'s Suppl. Br., ECF No. 41; Pl.'s Suppl. Br., ECF No. 42.  Oral argument was conducted on April 13, 2022.  *See* Tr. of Oral Arg. (Apr. 13, 2022) ("Hr'g Tr."), ECF No. 46.  The Court ordered post-hearing briefs, which the parties filed on May 18, 2022. *See* Def.'s Post-Arg. Suppl. Br., ECF No. 50; Pl.'s Reply, ECF No. 51.

## II.     Jurisdiction and Standard of Review

### A.        Jurisdiction

The Tucker Act grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a). Although the statute waives sovereign immunity, it does not create a substantive cause of action; a plaintiff must still "identify a separate source of substantive law that creates the right to money damages."  *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (stating that "the plaintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States" (citation omitted)); *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (stating that "[i]f a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit," but that "[i]t nonetheless remains true that the Tucker Act 'does not create any substantive right enforceable against the United States for money damages'" (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980))).

### B.        Motion to Dismiss Standard of Review

A court considering a motion to dismiss must accept all well-pled facts as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (collecting cases); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002).  When jurisdictional facts are challenged, such as under RCFC 12(b)(1), the plaintiff must

demonstrate jurisdiction by a preponderance of the evidence.  *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Granting a motion to dismiss for failure to state a claim under RCFC 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  Discussion

### A.  This Court Lacks Jurisdiction over Plaintiff's Claims for Equitable Relief and Claims Against Individual Federal Officials.

Plaintiff's Complaint names the Secretaries of the Army and Defense as defendants. Compl. ¶¶ 19–24.  However, the United States is the only proper defendant in the Court of Federal Claims and, with only narrow exceptions that do not apply in this case, the Court does not have jurisdiction over claims against any other defendants.[2]  *E.g.*, *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the [Court of Claims].");  *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").  Thus, this Court may not adjudicate any claims against the Secretaries of the Army and Defense, and will evaluate Mr. Richardson's claims only as they relate to the United States government.

In addition to his requests related to reinstatement and back pay, Plaintiff asks that the Court order the Army to alter the record of its investigation to deem the underlying allegations "unfounded," remove his name from the DCII (undo his "titling"), and strike the GOMOR and OER from his personnel file.  Compl. at 25–26.  Pursuant to RCFC 12(b)(1), Defendant moves to dismiss these claims for lack of subject matter jurisdiction.  Def.'s Mots. at 15–19.  It asserts that the regulations relating to these functions are not money-mandating, and accordingly, the court cannot exercise jurisdiction over those claims.  *Id.*

While the Court of Federal Claims may grant equitable relief "as an incident of and collateral to" judgment for money damages in order to "provide an entire remedy and to complete the relief afforded by the judgment," according to Defendant, altering these documents is not part of, or an administrative predicate for, any money-related relief.  *Id.* at 17–18 (quoting 28 U.S.C. § 1491(a)(2)).  Defendant explains that titling is an administrative procedure that does not imply guilt or innocence.  *Id.* at 18 n.4 (first citing Dep't of Def. Instr. 5505.07 ¶1.2(c); and then citing Army Reg. 190-45 ¶ 4-3(a)).  Even if Plaintiff were to prevail on his back pay claims, denial of his requests for modification of the investigation report, titling, GOMOR, and OER would not preclude him from obtaining monetary relief.  *Id.* at 18; Def.'s Reply at 2–5.  In the Government's view, these record modification requests sound more in tort or due process, neither of which is within the Court's jurisdiction.  *Id.* at 16.  In response, Plaintiff asserts the requested document alteration is related to a money-mandating provision of law.  *See* Pl.'s Resp.

---

[2] The only exceptions—inapplicable here—are that certain parties may be joined in an existing case pursuant to RCFC 19 and 20 or may intervene in an existing case pursuant to RCFC 24.

at 4–6.  He argues that his separation would not have occurred were it not for the allegedly flawed investigation that produced the titling.  *Id.* at 5–6.  This titling, he claims, led to the GOMOR and the OER, and in turn triggered the PRB that led to his removal from the promotion list.  *Id.*

This Court agrees that it lacks subject matter jurisdiction over Plaintiff's claims for equitable relief.  "To provide an entire remedy and to complete the relief afforded by the judgment," the Tucker Act provides that the Court of Federal Claims "may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."  28 U.S.C. § 1491(a)(2).  However, "[t]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'"  *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)).

Equitable relief that is an incident of and collateral to judgment for money damages is relief that is necessary to facilitate the payment of money damages.  Where there is "no need to consider [the injunctive relief sought] in deciding whether [the plaintiff] was entitled to back pay," the requested relief is "entirely unrelated to the back pay issue," and the "claim[] for equitable relief . . . lie[s] outside the Tucker Act jurisdiction of the Court of Federal Claims."  *Id.* at 581.  "Equitable doctrines can be employed incidentally to [the Court of Federal Claims'] general monetary jurisdiction either as equitable procedures to arrive at a money judgment, or as substantive principles on which to base the award of a money judgment."  *Pauley Petroleum, Inc. v. U.S.*, 591 F.2d 1308, 1315–16 (Ct. Cl. 1979).

Titling and derogatory administrative filings do not automatically trigger separation, and their removal would not change the government's financial obligations to Mr. Richardson.  Although they concern the same underlying set of facts as the reinstatement and promotion-related claims, titling and administrative filings are not sufficiently related to the monetary components of the reinstatement and promotion-related claims to be incidents of or collateral to them.  *See Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988).

In *Voge*, the U.S. Court of Appeals for the Federal Circuit decided that "review of [the plaintiff's] service records cannot be justified as 'incident of and collateral to' the award of [monetary damages] because there was no reason to consider them in deciding whether in the [money-related] decision the military followed its own regulations."  *Id.*  The court stated that "the fortuity of the [money-related] decision" was insufficient "to open all of [the plaintiff's] records and the actions of boards and officers over a period of several years to judicial scrutiny when they would be otherwise unreviewable in the Claims Court."  *Id.*  The same is true in the instant case.  Although all of Plaintiff's claims concern the same underlying events, the investigation report, DCII, GOMOR, and OER have no bearing on Mr. Richardson's entitlements under the Military Pay Act.  Accordingly, this Court lacks subject matter jurisdiction over those claims.  RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

B.     **Plaintiff Voluntarily Retired from the Army.**

1.     **Statutes That Render Certain Retirements Involuntary Do Not Apply to Plaintiff.**

In addition to its motion under RCFC 12(b)(1), Defendant moves to dismiss Plaintiff's remaining allegations under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Def.'s Mots. at 19–22. It is well-settled that a former servicemember's claim for wrongful retirement or separation must fail under RCFC 12(b)(6) if that retirement or separation was voluntary. *See Metz v. United States*, 466 F.3d 991, 1000 (Fed. Cir. 2006) (holding that "the issue of the voluntariness of a plaintiff's separation from service," which had long been considered "a jurisdictional concern," is rather "a part of the merits of a case brought under the Military Pay Act"); *Carmichael v. United States*, 298 F.3d 1367, 1371 (Fed. Cir. 2002) (stating, before *Metz*, that "[i]f a discharge from service is voluntary, then the Court of Federal Claims lacks jurisdiction to review the discharge or any back pay damages claims").

A retirement is presumed to be voluntary, but that presumption may be rebutted. *Carmichael*, 298 F.3d at 1372. Indeed, some retirements are considered involuntary by statute. For example, when certain commissioned officers are passed over for promotion by two consecutive promotion boards, they must retire or be discharged. 10 U.S.C. §§ 580(a)(1), 631(a)(1)–(2), 632(a)(1)–(2). Even if such an officer retires before the last possible date permitted by the statute, that retirement "shall be considered to be an involuntary retirement or discharge for purposes of any other provision of law." 10 U.S.C. §§ 580(e)(4), 631(b), 632(b). Mr. Richardson argues that, because his notification of separation referred to this requirement, "Plaintiff was discharged in line with 10 U.S.C. § 580, titled 'regular warrant officers twice failing of selection for promotion: involuntary retirement or separation.'" Pl.'s Resp. at 10–11 (quoting AR 891).

However, the relevant statutes only apply to chief warrant officers in the pay grades W-2 through W-4 and commissioned officers in the pay grades of O-2 through O-4. 10 U.S.C. §§ 573(a)(1), 580(a)(1), 631(a)(1)–(2), 632(a)(1)–(2). As a WO, rather than a chief warrant officer, Mr. Richardson held the pay grade W-1, and his promotion was governed by "regulations prescribed by the Secretary concerned." 10 U.S.C. § 573(a)(2). The Army's regulation pursuant to this statute requires that an active-duty officer "not recommended for promotion to the grade of . . . CW[O]2 will be separated not later than 90 calendar days after the Promotion Review Authority approves the nonrecommndation [sic] for promotion." Army Reg. 600-8-24 ¶ 5-11 (citation omitted).

Although Mr. Richardson's separation notice refers to circumstances in which an officer is twice passed over for promotion, it neither explicitly states nor implies that these factors applied to Mr. Richardson. The part of the statute that applies to WOs delegates authority over promotion procedures to the Army. 10 U.S.C. § 573(a)(2). The Army's regulation on the subject—unlike the statutes that apply to other officers—does not require that a retirement "be considered . . . involuntary . . . for purposes of any other provision of law," and does not rebut the presumption of voluntariness. Army Reg. 600-8-24 ¶ 5-11; *see* 10 U.S.C. §§ 580(e)(4), 631(b), 632(b). Accordingly, Mr. Richardson's retirement was not involuntary as a matter of law.

### 2.    Plaintiff's Retirement Did Not Result from Duress or Coercion.

A retirement may also be "rendered involuntary if, among other things, it is obtained under duress or coercion." *Carmichael*, 298 F.3d at 1372.  In *Carmichael*, the Federal Circuit held that, to show a service member's separation was involuntary because it resulted from duress or coercion, a plaintiff "must demonstrate that: (1) he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts." *Id.* at 1372.  "Because this is not a disjunctive test, a plaintiff must establish all three elements for the exception [to the presumption of voluntariness] to apply." *Nickerson v. United States*, 35 Fed. Cl. 581, 586 (1996), *aff'd*, 113 F.3d 1255 (Fed. Cir. 1997) (Table).  Further, coercion is measured by an objective standard, not the individual's subjective perception. *Carmichael*, 298 F.3d at 1372.  The government's wrongful conduct, such as a failure to adhere to its own regulations, could constitute coercive action. *Id.* (citing *Roskos v. United States*, 549 F.2d 1386, 1389–90 (Ct. Cl. 1977)); *see also, e.g.*, *Schultz v. U.S. Navy*, 810 F.2d 1133 (Fed. Cir. 1987) ("A resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency.").

#### a.    *Carmichael* Prong One

The first prong of the *Carmichael* test requires a plaintiff to demonstrate that they "involuntarily accepted the terms of the government." *Carmichael*, 298 F.3d at 1372.  Plaintiff claims that he demonstrates involuntariness because he availed himself of every avenue of redress the Army provided to avoid separation. *See* Pl.'s Resp. at 11 – 12; Hr'g Tr. 10:23–11:10.  He alleges that "[a]t every point he was given a choice to stay and fight, he, in fact, did at the BOI, at the PRB." Hr'g Tr. 11:3–11:5.  Regarding the five-month gap between his retirement request on April 5, 2017, and his mandatory retirement date of September 5, 2017, Plaintiff claims that the Federal Circuit, in *Adkins v. United States*, "rejected" the argument "that [a] discharge was considered voluntary due to [a plaintiff's] election of an earlier date" than required.  Pl.'s Resp. at 10 (citing *Adkins*, 68 F.3d 1317, 1321 (Fed. Cir. 1995)).

Conversely, the Government points to the language in Mr. Richardson's retirement documents to illustrate that his retirement was voluntary, noting that the narrative reason listed on his Certificate of Release from Active Duty is "voluntary early retirement." Def.'s Mots. at 20 (quoting Compl. Ex. 10 at 66, ECF No. 1-4).  Even the ABCMR decision on which Mr. Richardson relied states that he "*requested* [early retirement]" and "*requested* release from active duty." *Id.* (citing Compl. Ex. 10 at 5, 44 ¶ 25).  The Government adds that Mr. Richardson's reliance on *Adkins* is "misplaced" because the plaintiff in that case had been passed over twice for promotion, so his retirement was deemed involuntary by statute, regardless of the date that he submitted his paperwork. Def.'s Reply at 10 (citing *Adkins*, 68 F.3d at 1319–21).

Mr. Richardson fails to rebut the presumption that his retirement was voluntary.  In fact, the record overwhelmingly indicates the voluntary nature of his retirement.  On April 4, 2017, Mr. Richardson signed an acknowledgment of his separation notice, which delineated his options for leaving active duty.  AR 891–93.  After choosing the early retirement option, he wrote in a request for an SRB, but added that if his request were denied, he would apply for early retirement.  AR 893.  And if the early retirement application were denied, he wrote that he would

accept a Reserve appointment. *Id.* Even though the separation notice stated that Mr. Richardson had until September 5, 2017, to leave active duty, he filed an application for early retirement the very next day. AR 888.

Moreover, despite the ample time available to make a decision or petition the ABCMR, Mr. Richardson submitted his retirement request roughly seven weeks before filing his petition. *Compare* AR 893 (retirement request dated April 5, 2017), *with* AR 133 (ABCMR petition dated May 22, 2017). As Plaintiff's counsel conceded at oral argument, "[h]e was not required" to retire when he did, or before filing a petition with the ABCMR. Hr'g Tr. 26:2–26:10. He could have waited to resign until after his ABCMR appeal was resolved, either in his favor or against. When Mr. Richardson chose to retire on April 5, 2017, he acknowledged that the retirement application could "not be withdrawn, except for extreme compassionate reasons or for the definitely established convenience of the Government." AR 889–90.

The fact that Mr. Richardson apparently changed his mind about retirement and engaged in administrative processes to attempt to remain on active duty does not negate his clear expression of intent to retire at the time he submitted his request. Indeed, on his retirement application, Mr. Richardson explicitly acknowledged that it could "not be withdrawn except for extreme compassionate reasons or for the definitely established convenience of the Government." *See id.* As Defendant's counsel states, "[h]e was a military officer and he voluntarily signed the paperwork. He applied for retirement. . . . Whether he thought this was sufficient doesn't make his retirement involuntary." Hr'g Tr. 19:23–20:3.

### b. *Carmichael* Prong Two

The second prong of the *Carmichael* test requires that "circumstances permitted no other alternative" but to "involuntarily accept[] the terms of the government." *Carmichael*, 298 F.3d at 1372. Whether Plaintiff satisfies this prong depends on what "the terms of the government" were to which "the circumstances permitted no alternative."

Plaintiff's arguments imply that the relevant term is the termination of his appointment as an active-duty officer. He contends that the fact that there were choices in the way in which he could leave is irrelevant because circumstances permitted no alternative to his active-duty appointment ending. *See* Pl.'s Resp. at 9–12. *See also* Hr'g Tr. 11:8–10; 26:18–24; 28:11–25. Plaintiff points to the notification of separation, which "emphatically state[d]" that he "*must* separate from the Army" and that his separation date was "*established by Federal statute*." Pl.'s Resp. at 12 (quoting AR 891–92). He adds that requesting to join the Reserves was not a viable alternative because it would still mean the termination of his employment, and in any event, there was no guarantee that the Reserves would accept him. Hr'g Tr. at 10:19–21, 16:15–17:2.

Plaintiff invokes *Christie v. United States*, 518 F.2d 584 (Ct. Cl. 1975), the case from which *Carmichael* derived the three-part involuntariness test, to argue that his retirement was involuntary. Pl.'s Resp. at 9–10. In that case, a federal employee retired instead of availing herself of the procedures in place to resist a dismissal for cause. *Christie*, 518 F.2d at 586–87. The Court of Claims determined that the plaintiff "had a choice" in that "[s]he could stand pat and fight," but "chose not to." *Id.* at 587. The court held that "[m]erely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." *Id.* In Plaintiff's view, this means that the "alternatives" in the test refer to means through which a plaintiff could

have resisted termination but chose not to.  Pl.'s Resp. at 9–12.  Plaintiff claims that "[u]nlike *Christie* and other cases where servicemembers are given the option of voluntarily retiring in lieu of 'unpleasant alternatives,' Plaintiff was never given the option to fight to stay in service to the United States Army," and that "Plaintiff only had the choice of retiring early or retiring by the date required by the Federal statute."  Pl.'s Resp. at 12 (citing AR 891–92).

Defendant insists that the manner in which Mr. Richardson's employment ended is the relevant term "to which circumstances permitted no alternative."  *Carmichael*, 298 F.3d at 1372.  The "series of options from which [Mr. Richardson] could choose regarding separation," including those that would allow him to continue serving in another capacity, demonstrate that Mr. Richardson made a voluntary choice to retire.  Def.'s Mots. at 19–20; *see also* Def.'s Reply at 7, 9, 12; Hr'g Tr. at 4:2–5:10, 19:14–19; 19:23–20:3.  Defendant argues that Mr. Richardson's retirement was voluntary because he retired rather than confronting any "less desirable" or "unpleasant alternatives." Def.'s Reply at 6–7, 9 (quoting *Sammt v. United States*, 780 F.2d 31, 32–33 (Fed. Cir. 1985); Def.'s Mots. at 10, 21–22 (quoting *Sammt*, 780 F.2d at 33); Hr'g Tr. 4:7–13.

The U.S. Court of Appeals for the Federal Circuit's precedent supports Defendant's position.  That court first addressed the voluntariness of a service member's retirement in *Sammt v. United States*.  In that case, as in the instant case, the plaintiff was notified that his tenure as an active-duty officer would end on a certain date unless he requested retirement at an earlier date.  780 F.2d at 31–32.  Again, as in the instant case, Major Sammt exhausted every available form of administrative appeal to no avail and ultimately submitted a retirement request.  *Id.*  But the Federal Circuit determined that the retirement was voluntary, making two key findings.  First, citing *Christie*, the court "conclude[d], as [it had] in civilian pay cases, that the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less desirable alternative."  *Id.* at 32.  Second, it noted that Major Sammt retired pursuant to a statute that pertained to "voluntary" retirements, whereas, if he had let his commission expire by operation of law, a related statute would have rendered his retirement "involuntary."  *Id.* at 33.

The statutory framework under which Major Sammt retired was replaced between the time he retired and the Federal Circuit's decision in his case.  Under current law, a military retirement or discharge like that of Major Sammt—triggered because the officer was passed over twice for promotion—"shall be considered to be an involuntary retirement or discharge for purposes of any other provision of law." [3]  10 U.S.C. §§ 580(e)(4), 631(b), 632(b).  Nonetheless, the court unequivocally rooted its decision in "the rationale that a choice of unpleasant alternatives does not make a choice involuntary."  *Sammt*, 780 F.2d at 33.  The Federal Circuit has continued to cite *Sammt* in both military and civilian employment cases for this proposition. *See Cruz v. Dep't of the Navy*, 934 F.2d 1240, 1245 (Fed. Cir. 1991); *Solomon v. Dep't of the Navy*, 36 F.3d 1115 (Fed. Cir. 1994) (Table); *Jenson v. Merit Sys. Prot. Bd.*, 47 F.3d 1183 (Fed.

---

[3] This is the same statutory framework that Plaintiff unsuccessfully argues should apply to him, even though it does not apply to WOs.

Cir. 1995) (Table); *Moyer v. United States*, 190 F.3d 1314, 1318–19 (Fed. Cir. 1999). This reasoning survived the change to the statutory scheme.[4]

The same analysis used in *Sammt*, where the plaintiff's choices were confined to *how*, rather than *whether*, to end his active service, applies here. Because Mr. Richardson, like Major Sammt, requested and obtained a retirement on more favorable terms than at least one alternative, there was an alternative to accepting the terms of the government. *Sammt*, 780 F.2d at 32; *Carmichael*, 298 F.3d at 1372.

### c. *Carmichael* Prong Three

The third prong of the *Carmichael* test requires a plaintiff to demonstrate that the "circumstances [that permitted no other alternative but to involuntarily accept the terms of the government] were the result of the government's coercive acts." *Carmichael*, 298 F.3d at 1372. A plaintiff may demonstrate coercion by showing that the government's conduct was "wrongful." *Roskos*, 549 F.2d at 1389–90. Plaintiff puts forward three theories of the Army's wrongful conduct.

### i. Bad Faith

First, Mr. Richardson claims that the Army demonstrated bad faith by using its denial-of-promotion framework to achieve a separation from active duty that it could not achieve through a BOI. Pl.'s Resp. at 13–14 ("From the instant the Plaintiff was given the GOMOR and adverse OER, the Government has operated with unclean hands, not happy with the BOI they sent it to a PRB and forced their ultimate construct."). Second, he argues that the SA violated his own regulation by refusing to grant Plaintiff the relief recommended by a unanimous ABCMR panel. Hr'g Tr. 31:14–21 ("[T]he wrongful conduct was the initial BCMR decision that the Government now wants to obviate. . . [The ASA (M&RA)] didn't follow his own regulations."). Finally, he argues that the Army abused its discretion and violated his due process by convening a PRB without waiting to review his BOI report, which he had told HRC would arrive imminently. Hr'g Tr. 33:2–22 (stating that Plaintiff's inability to present the BOI report to the PRB "eviscerates any due process that he may have had").

Plaintiff's first contention is simply conclusory. He provides no factual allegations to support his assertion that the Army acted in "bad faith" or with "unclean hands" by pursuing his separation and then removing him from the promotion list. *See* Pl.'s Resp. at 13–14. Although

---

[4] Notwithstanding this continued reliance on the "less desirable alternative" rationale, the Court of Federal Claims distinguished *Sammt* based on the change in the statutory scheme in at least one instance. In *Canonica v. United States*, the plaintiff faced "a mandatory separation program which allowed three methods of separation," and "had no choice concerning whether the regulation would apply to him and compel his separation." 41 Fed. Cl. 516, 521 (1998). The plaintiff's efforts to remain on active duty were denied and he "unwillingly retired pursuant to that program." *Id.* Under these circumstances, the court decided that "[t]o say that plaintiff's selection of one of the three options under the mandatory [retirement] regulation made his retirement *voluntary* would be a corruption of language," and "conclude[d] that his retirement was involuntary." *Id.*

he states that his "retirement was not voluntary" and that the government's acts were "coercive," he does not demonstrate that an act of bad faith led him to retire how and when he did.  *See id.*  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555–56 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

### ii.   Violation of Army Regulation

Mr. Richardson's second argument, that the Army violated its own regulations when the ASA (M&RA) did not follow the recommendation of a unanimous ABCMR panel, similarly fails.  Because the ASA's decision regarding the ABCMR recommendation came after Mr. Richardson's retirement, it could not have "directly caused" the retirement.  *See Carmichael*, 298 F.3d at 1376 (quoting *Roskos*, 549 F.2d at 1389).  Thus, it cannot cure the voluntariness that is fatal to a claim for back pay.  Although a plaintiff who voluntarily retired may sustain a claim for money or benefits to which they would be entitled "irrespective of the manner in which the claimant leaves the service," a plaintiff "who voluntarily gives up any right to compensation and benefits cannot later claim entitlement to such."  *Moyer*, 190 F.3d at 1319.  Plaintiff's back pay claim is premised on a wrongful retirement; events that occurred after he retired are irrelevant.

### iii.   Due Process Violation

Finally, Plaintiff fails to show that the government's actions constituted an abuse of discretion resulting in a due process violation, or that such a violation could satisfy the third prong of the *Carmichael* test.  At oral argument, Plaintiff's counsel stated that he "would relish the opportunity . . . to address" the issue of whether due process required the PRB to wait until it could review his BOI report and whether this could satisfy the third prong of the *Carmichael* test.  Hr'g Tr. 33:2–22.  However, after the Court allowed briefing on precisely that issue, Plaintiff stated that "[t]he issue which grants Plaintiff relief is not whether abuse of government discretion is tantamount to wrongful conduct for purposes of *Carmichael*," but "rather, the issue at hand is whether the Army is able to ignore their own regulations to override a unanimous decision from the ABCMR."  Pl.'s Reply at 1.  Plaintiff goes on to argue that "[t]he precedent following *Carmichael* has progressively expanded its categories of what is considered 'coercive acts' by the government," and cites three cases from the Court of Federal Claims.  *Id.* at 2–3 (first citing *Sinclair v. United States*, 66 Fed. Cl. 487, 492 (2005); then citing *Sommers v. United States*, 149 Fed. Cl. 529, 537 (2020); and then citing *Banks v. United States*, No. 19-1888C, 2021 U.S. Claims LEXIS 2486, at *21 (Fed. Cl. Oct. 29, 2021).

Plaintiff does not offer any authority for this suggestion of an expanding definition of coercion, nor do the cases he cites support this contention.  *Sinclair* observes that deception or misrepresentation could render a resignation involuntary, a proposition that has stood for decades.  *Sinclair*, 66 Fed. Cl. at 492 (citing *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999)); *see also Christie*, 518 F.2d at 588.  *Sommers* merely notes that the test for coercion is an objective test, another proposition that pre-dates *Carmichael*.  *Sommers*, 149 Fed. Cl. at 537 (citing *Carmichael*, 298 F.3d at 1372); *see also Christie*, 518 F.2d at 587.

And while *Banks* examines various indicia of involuntariness, all are grounded in decades of Circuit precedent.  *Banks*, 2021 U.S. Claims LEXIS 2486, at *21 ("[A] plaintiff may show an *involuntary* resignation, and thereby vitiate the presumption that the resignation was voluntary, if

the resignation stemmed from: (1) duress or coercion; (2) government officers' misrepresentation or deception; (3) time pressure; or (4) an unsuccessful withdrawal before the effective date." (citation omitted)).  *See also Cunningham v. United States*, 423 F.2d 1379, 1384–85 (Ct. Cl. 1970) (unsuccessful withdrawal of resignation); *Perlman v. United States*, 490 F.2d 928, 932–33 (Ct. Cl. 1974) (time pressure).  None of these cases demonstrate that "[t]he precedent following *Carmichael* has progressively expanded its categories of what is considered 'coercive acts' by the government," nor that an abuse of discretion or a due process violation is contemplated as the sort of "wrongful conduct" that could render a retirement involuntary.  Pl.'s Reply at 2.

A plaintiff seeking back pay "must establish all three elements [of the test for duress or coercion] for the exception [to the presumption of voluntariness] to apply."  *Nickerson*, 35 Fed. Cl. at 586.  In this case, none of the three elements is present.  Accordingly, Plaintiff has failed to overcome the presumption that his retirement from the Army was voluntary.  And because involuntariness is an essential component of a back pay claim under the Military Pay Act, Plaintiff fails to state a claim upon which relief can be granted.

## IV.   Conclusion

For the reasons set forth above, this Court lacks subject matter jurisdiction over Plaintiff's request for equitable relief that is not "an incident of or collateral to" his request for damages, and his allegations fail to state a claim upon which relief can be granted.  Accordingly, Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) is **GRANTED**, the parties' Cross-Motions for Judgment on the Administrative Record are **DENIED** as moot, and the Complaint must be **DISMISSED**.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

14